ORDER OF R. R. TELEGRAPHERS v. LOUISVILLE & N. R. CO

(Circuit Court, W. D. Kentucky. November 17, 1906.)

1. REMOVAL OF CAUSES—VALUE IN CONTROVERSY—HOW SHOWN.

In a suit in a state court for an injunction, based upon a law of the United States, where the value in controversy is not shown by the complainant's pleading, for the purposes of removal of the cause, it may be shown in the petition for removal.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 42, Removal of Causes, § 132.]

2. COMMERCE—REGULATION OF INTERSTATE CARRIERS—CONSTITUTIONALITY OF STATUTE.

Act June 1, 1898, c. 370, § 10, 30 Stat. 428 [U. S. Comp. St. 1901, p. 3210], which makes it a criminal offense for any interstate carrier as an employer to require any "employé or person seeking employment" to enter into an agreement not to become or remain a member of any labor organization, or to threaten any employé with loss of employment or un-

justly discriminate against any employé because of his membership in such labor organization, is void, as not within the constitutional power of Congress to regulate interstate commerce.

2. MASTER AND SERVANT — PREVENTING EMPLOYÉS FROM JOINING LABOR UNIONS—RIGHTS OF LABOR ORGANIZATIONS—CONSTRUCTION OF STATUTE.

If such section be assumed to be constitutional, and to give by implication a right to a civil remedy, such remedy is confined to "employés" or "persons seeking employment," and it cannot be made the basis of a suit for an injunction by a labor corporation to restrain a carrier from preventing by intimidation or threats complainant's representatives, who are neither employés nor seeking employment, from soliciting members from among defendant's employés.

In Equity. On demurrer to bill.

Morton K. Yonts, for complainant.

Helm & Helm, for defendant.

EVANS, District Judge. The complainant filed its petition (hereinafter to be called its "bill of complaint") in the Jefferson circuit court, in which it alleged that it was a body corporate, organized under the laws of the state of Iowa, and was "an organization instituted for the purpose of uniting railroad telegraphers, line repairers, levermen, and interlockers, employed on railroads, for the protection of their interests, to elevate their social, moral, and intellectual condition, to promote the general welfare of its membership, and to promote and encourage a mutual benefit department for the aid and comfort of the beneficiaries of deceased members." The bill of complaint further shows that the complainant is engaged in lawful business in Kentucky and elsewhere; that it derives revenue for its existence from the collection of dues from its members; that it has been endeavoring to secure members from among the railroad telegraph operators employed by the defendant, and for that purpose has sent out representatives to solicit members among the railroad telegraph operators employed by the defendant, but that the defendant, to prevent its said employés from joining the order, has sent forth various detectives for the purpose of inaugurating a system of intimidating and terrorizing complainant's representatives, and have done so to the extent of deterring them and making them afraid to solicit such operators employed by the defendant to become members of the complainant order; that the defendant, to accomplish its purpose, has carried on a campaign of intimidation against complainant's representatives in the work aforesaid; that the defendant, through its agents, has followed complainant's representatives, and has endeavored to dissuade its telegraph operators from becoming members of its order by threats of dicharge from service, and has thus put its employés in fear; that the defendant's agents have listened to complainant's agents when they talked to defendant's operators, and have prevented said operators, by threats of force and violence and by putting them in fear, from engaging in conversation with complainant's representatives, so as to ascertain the objects and purposes of complainant's organization, and have threatened complainant's representatives with great bodily harm, and by intimidation and a display of force and arms, and by threatened intimidation, have endeavored to compel complainant's representatives to desist from their efforts to secure members from among

defendant's said telegraph operators. The bill avers that the complainant "is engaged in the good and lawful business aforesaid, and that the sole and only purpose of its organization is to promote the business and welfare and interests of railroad telegraph operators throughout the country, and that if it is enabled to exercise its rights and privileges under the law it can and will secure a great number of members for the said order from among the railroad telegraph operators employed by the defendant, and that it will derive large revenue in the shape of dues from said prospective members." The bill then sets forth the relief to which the complainant claims to be entitled, to wit, an injunction to compel the defendant to cease and altogether to desist from the conduct described in the bill, and states that "all the acts aforesaid which have been committed by the defendant, and its agents, servants, and employés, in the way and manner as set forth in this petition, and which the said defendant will continue to do unless enjoined and restrained by the orders of this court, are in violation of an act of Congress of the United States of America, of date June 1, 1898, 30 Stat. 424, c. 370 [U. S. Comp. St. 1901, p. 3205], entitled "An act concerning carriers engaged in interstate commerce and their employés"; and more particularly are the said acts which defendant and its agents, servants, and employés have committed, and will continue to commit unless enjoined and restrained, in violation of section 10 of said act (30 Stat. 428 [U. S. Comp. St. 1901, p. 3210]), which is in words and figures as follows, to wit:

"That any employer subject to the provisions of this act and any officer, agent, or receiver of such employer who shall require any employé or any person seeking employment as a condition of such employment, to enter into an agreement, either written or verbal, not to become or remain a member of any labor corporation, association, or organization, or shall threaten any employé with loss of employment, or shall unjustly discriminate against any employé because of his membership in such a labor corporation, association, or organization, or who shall require any employé or any person seeking employment, as a condition of such employment, to enter into a contract whereby such employé or applicant for employment shall agree to contribute to any fund for charitable, social, or beneficial purposes; to release such employer from legal liability for any personal injury by reason of any benefit received from such contribution to such fund; or who shall, after having discharged an employé, attempt or conspire to prevent such employé from obtaining employment, or who shall, after the quitting of an employé, attempt or conspire to prevent such employé from obtaining employment is hereby declared to be guilty of a misdemeanor, and, upon conviction thereof in any court of the United States of competent jurisdiction in the district in which such offense was committed, shall be punished for each offense by a fine of not less than one hundred dollars and not more than one thousand dollars."

The bill also avers that the defendant is a common carrier engaged in interstate commerce. Upon the petition of the defendant the action was removed to this court, and subsequently the defendant demurred to the bill. Pending the consideration of the questions raised by the demurrer doubts arose in the mind of the court as to whether the case was removable, and an argument was directed upon that question. It is, of course, manifest that the suit arises, at least in part, if not entirely, under the laws of the United States, but as the complainant did not (and under the state practice need not) show any value in

controversy, the question arose whether the value of the matter in dispute could be shown in the petition for removal alone. Whether we should as to this question follow the rule in Tennessee v. Union & Planters' Bank, 152 U. S. 454, 14 Sup. Ct. 654, 38 L. Ed. 511, Postal Telegraph Co. v. Alabama, 155 U. S. 487, 15 Sup. Ct. 192, 39 L. Ed. 231, Oregon Short Line Ry. v. Skottowe, 162 U. S. 495, 16 Sup. Ct. 869, 40 L. Ed. 1048, Arkansas v. Kansas & Texas Coal Co., 183 U. S. 185, 22 Sup. Ct. 47, 46 L. Ed. 144, which requires that the facts showing that the case arose under the Constitution or laws of the United States shall appear by the plaintiff's pleading and not elsewhere, or whether we should follow the rule in Stevens v. Nichols, 130 U. S. 231, 9 Sup. Ct. 518, 32 L. Ed. 914, and City of Ysleta v. Canada (C. C.) 67 Fed. 6, which permits the fact of diverse citizenship to be shown in the petition for removal, was the question to be solved. We found it in some confusion, some cases holding one way and some the other; but upon the averments of the petition for removal, as now amended and not controverted (Dishon v. Cincinnati, N. O. & T. P. Ry. Co., 133 Fed. 471, 66 C. C. A. 345), and upon the consideration that such an injunction as that prayed for, if granted, would represent a considerable money value, we have reached the conclusion not to remand the case.

This brings us to the questions arising upon the demurrer. At the argument some contention was made by the complainant that the bill bore wider than a claim to relief under section 10 of the act of June 1, 1898, and possibly there might be some color for the suggestion if, as will be seen from the averments copied from the bill of complaint, the complainant did not charge the acts complained of to be violative of that statute and claim relief entirely upon that ground. Otherwise the averments of the bill as to the acts and conduct of the defendant as to force, intimidation, and violence are too general, vague, and indefinite to make a case for the exercise of the power of the court to grant extraordinary relief, without giving the party defendant an opportunity to try the issues of fact by a jury. Granting an injunction should never be done, except in a clear case. It is always a matter of sound discretion, and one should never be granted unless the facts are very explicitly disclosed and appear to be such as to warrant the relief where there is no plain and adequate remedy at law. The complainant is an Iowa corporation, which states the objects of its corporation to be at least partly social. It claims to be soliciting, through "representatives," persons in the employment of the defendant to join it; but, while it shows that the defendant is opposed to its employés doing so, and is endeavoring to prevent it by a campaign of intimidation, etc., no one of such "representatives" is named, nor is any specific instance of intimidation or violence set out or described in such form as to identify it. Without something much more definite than this, there is no equity in the bill, when viewed from the standpoint of general equitable principles; that is to say, no case is disclosed by the bill which would properly authorize the relief asked. And especially does this appear to be true when we reflect that, if any injury has been or should be done to those "representatives," they, as individuals, will personally

have a plain remedy thereon. For such injury to its "representatives," in the absence of a conspiracy, the complainant in its own name does not appear to be entitled to any relief.

But, apart from those considerations, we think the proper construction of the bill of complaint limits it to a claim to relief under section 10 of the act of June 1, 1898, and nothing else. That section seems to be relied upon as the single basis of the relief sought, and the demurrer will be disposed of from that point of view. Otherwise, if complainant claims to be entitled to relief upon two separate and distinct grounds, the bill is open to the objection of multifariousness. Brown v. Guaranty Trust Co., 128 U. S. 403, 9 Sup. Ct. 127, 32 L. Ed. 468.

1. We have heretofore, in the case of United States v. J. M. Scott, held section 10 of the act to be unwarranted by the Constitution. In the opinion delivered in that case (118 Fed. 431), the grounds for that conclusion were stated at large, and need not be repeated.

2. We think, however, we need not have gone that far in this case, because we think that no proper construction of section 10 would include the case stated by the complainant. That section makes certain things criminal when done by a common carrier engaged in interstate commerce, as the defendant here is; but it covers only "employés" of such carriers and "persons seeking employment" from such carriers. It is neither claimed nor averred in the bill that the complainant is an "employé" or a "person seeking employment" from the defendant, and for that reason the complainant in no way shows itself to come within the provisions of section 10. Indeed, it is obvious, from the nature of the complainant, that it could not itself be an employé nor a seeker of employment for itself.

3. Section 10 does no more than make certain acts criminal and punishable by criminal proceedings. Certainly it does not, in terms, give any right to a civil remedy even to "employés" or to "persons seeking employment." If the right to a remedy by civil action could be implied in their favor from the prohibitions of the statute, it certainly must be that the complainant is much too remote from any inclusion in the terms or purposes of the legislation to be entitled to a still further implication of a nature to entitle it to a civil remedy thereunder. It would seem, therefore, to be entirely clear that, whether section 10 be constitutional or not, and whether its prohibitions would by implication give a civil remedy to "employés" or to "persons seeking employment," the complainant, being neither one or the other, is not entitled to any of the benefits of legislation which by no proper interpretation can be said to embrace it.

4. Besides, if section 10 be criminal only in its scope, and if it cannot be implied from its terms that any civil right or remedy was intended thereby to be given, then the effect of the complainant's bill is to seek an injunction against the commission of a crime. This, under the federal jurisprudence, is not admissible.

For these reasons the demurrer will be sustained, and the bill will be dismissed, with costs.